JOHN C. BOYDEN (Nevada State Bar No. 3917)
jboyden@etsreno.com
ERICKSON, THORPE & SWAINSTON, LTD.
99 West Arroyo Street
Reno, Nevada 89505
Telephone: (775) 786-3930

GABRIEL T. BLUESTONE (*Pro Hac Vice Forthcoming*)
gtb@bluestonelaw.com
M. ZACHARY BLUESTONE (*Pro Hac Vice Forthcoming*)
mzb@bluestonelaw.com
BLUESTONE LAW, LTD.
1717 K Street NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 655-2250

*Attorneys for Plaintiff*
*Türkiye Ihracat Kredi Bankasi A.Ş.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| TURKIYE IHRACAT KREDI BANKASI, A.Ş., <br> Plaintiff, <br><br> v. <br><br> NATURE'S BAKERY, LLC F/K/A BELLA FOUR BAKERY, INC., <br><br> Defendant, | Case No. _____ <br><br> **COMPLAINT** <br><br> **(Breach of Contract; Account Stated; Action for Price; Unjust Enrichment)** |

Plaintiff, Türkiye İhracat Kredi Bankası A.Ş. a/k/a Export Credit Bank of Turkey, Inc. d/b/a Turk Eximbank ("Turk Eximbank"), for its Complaint against Defendant Nature's Bakery, LLC f/k/a Bella Four Bakery, Inc. ("Nature's Bakery"), states and alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff seeks money damages against Defendant for breach of contract, account stated, action for price, and unjust enrichment arising from Defendant's failure to make payment of $399,315.48 for the purchase of food product from Elmas Diş Ticaret A.Ş. ("Elmas"), a Turkish wholesale distributor of dried fruit and related food products that assigned to Plaintiff the payment rights for this claim.

## THE PARTIES

2. Plaintiff Türkiye İhracat Kredi Bankası A.Ş. a/k/a Export Credit Bank of Turkey, Inc. d/b/a Turk Eximbank is a joint stock corporation organized and existing under the laws of the Republic of Turkey with its principal place of business at Saray Mahallesi Üntel Sokak, No: 19, 34768 Ümraniye, İstanbul, Turkey.

3. Defendant Nature's Bakery, LLC f/k/a Bella Four Bakery, Inc. is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 425 Maestro Drive, Suite 101, Reno, Nevada 89511. Upon information and belief, Defendant's members are citizens of Nevada and California.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 (diversity of citizenship). There is complete diversity between the parties, and the matter in controversy exceeds the sum of $75,000, exclusive of interest, costs, and attorney fees.

5. Personal jurisdiction is proper as Defendant conducts business and maintains operations in the State of Nevada and within this district and has purposefully availed itself of the privilege of conducting activities in the forum.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a)(1) and 1391(c) because the Defendant resides in this district.

## FACTUAL ALLEGATION COMMON TO ALL CLAIMS

7. Defendant Nature's Bakery is an up-and-coming producer of soft-baked snacks made with real fruit and whole grains. The private equity backed company manufactures in Nevada and Missouri and sells its products through national grocers and retailers such as Amazon, Whole Foods, Wal-Mart, Staples, Kroger, Safeway, and Costco.

8. Defendant's success—including hundreds of millions in annual revenue and NASCAR sponsorship of global icon Danica Patrick—rests in part, however, on refusing to pay Turkey's government owned export credit bank which financed shipments from Elmas.

9. On or about November 23, 2015, Elmas provided Defendant a draft Sales Contract for the sale of 5.58 million pounds of Turkish dried fig paste, which Defendant executed on or about December 11, 2015.

10. The Sales Contract's payment terms identified that payment was to be made to Plaintiff Turk Eximbank: "Payment Terms:…via [Turk] Exim Bank."

11. Elmas and Nature's Bakery further agreed that Elmas had until December 31, 2016 to make full shipment of the fig paste.

12. Elmas ultimately delivered nearly 5 million pounds of fig paste to Defendant in or around the summer of 2016, and issued invoices to Defendant reflecting the sales.

13. Despite receiving the fig paste, accepting it, and retaining the benefits of such, and promising payment to Turk Eximbank, Defendant has failed to pay $399,315.48 due to Plaintiff.

COMPLAINT
(Breach of Contract; Account Stated; Action for Price; Unjust Enrichment)

14. Pursuant to Turk Eximbank's export credit discount program, in which Elmas participated, Turk Eximbank was assigned the rights to 38 invoices issued to Defendant by Elmas between April 29 and June 9, 2016 (the "Invoices") for the fig paste purchased.

15. The Invoices total $1,094,192.14 (each assigned Invoice was for $28,794.53) and represent Defendant's purchases covered by Turk Eximbank's financing. A table of the Invoices is listed below.

| Shipment Date | Invoice Number | Invoice Date | Invoice Balance | Payment Due Date |
|---|---|---|---|---|
| 5/5/2016 | 80711 | 4/29/2016 | $28,794.53 | 7/20/2016 |
| 5/5/2016 | 80712 | 4/29/2016 | $28,794.53 | 7/26/2016 |
| 5/9/2016 | 80714 | 5/3/2016 | $28,794.53 | 7/28/2016 |
| 5/9/2016 | 80715 | 5/3/2016 | $28,794.53 | 7/29/2016 |
| 5/9/2016 | 80716 | 5/4/2016 | $28,794.53 | 8/1/2016 |
| 5/9/2016 | 80717 | 5/4/2016 | $28,794.53 | 8/3/2016 |
| 5/9/2016 | 80720 | 5/5/2016 | $28,794.53 | 8/5/2016 |
| 5/13/2016 | 80725 | 5/6/2016 | $28,794.53 | 8/8/2016 |
| 5/13/2016 | 80734 | 5/9/2016 | $28,794.53 | 8/10/2016 |
| 5/17/2016 | 80735 | 5/10/2016 | $28,794.53 | 8/1/2016 |
| 5/17/2016 | 80737 | 5/11/2016 | $28,794.53 | 8/2/2016 |
| 5/17/2016 | 80736 | 5/11/2016 | $28,794.53 | 8/3/2016 |
| 5/17/2016 | 80739 | 5/12/2016 | $28,794.53 | 8/5/2016 |
| 5/19/2016 | 80743 | 5/13/2016 | $28,794.53 | 8/8/2016 |
| 5/19/2016 | 80747 | 5/16/2016 | $28,794.53 | 8/10/2016 |
| 5/24/2016 | 80750 | 5/18/2016 | $28,794.53 | 8/6/2016 |
| 5/24/2016 | 80751 | 5/18/2016 | $28,794.53 | 8/8/2016 |
| 5/28/2016 | 80759 | 5/20/2016 | $28,794.53 | 8/10/2016 |
| 5/28/2016 | 80758 | 5/20/2016 | $28,794.53 | 8/12/2016 |
| 5/28/2016 | 80762 | 5/23/2016 | $28,794.53 | 8/14/2016 |
| 5/29/2016 | 80764 | 5/24/2016 | $28,794.53 | 8/17/2016 |
| 5/29/2016 | 80766 | 5/25/2016 | $28,794.53 | 8/19/2016 |
| 5/29/2016 | 80767 | 5/25/2016 | $28,794.53 | 8/22/2016 |
| 5/29/2016 | 80768 | 5/25/2016 | $28,794.53 | 8/24/2016 |
| 5/29/2016 | 80769 | 5/26/2016 | $28,794.53 | 8/26/2016 |
| 6/2/2016 | 80773 | 5/27/2016 | $28,794.53 | 8/29/2016 |
| 6/2/2016 | 80774 | 5/27/2016 | $28,794.53 | 9/1/2016 |
| 6/4/2016 | 80785 | 6/2/2016 | $28,794.53 | 9/2/2016 |
| 6/4/2016 | 80784 | 6/2/2016 | $28,794.53 | 8/31/2016 |

| 6/4/2016  | 80782 | 6/1/2016  | $28,794.53    | 8/29/2016 |
|-----------|-------|-----------|---------------|-----------|
| 6/4/2016  | 80781 | 6/1/2016  | $28,794.53    | 8/26/2016 |
| 6/4/2016  | 80779 | 5/30/2016 | $28,794.53    | 8/24/2016 |
| 6/4/2016  | 80777 | 5/30/2016 | $28,794.53    | 8/22/2016 |
| 6/10/2016 | 80789 | 6/7/2016  | $28,794.53    | 8/25/2016 |
| 6/10/2016 | 80790 | 6/7/2016  | $28,794.53    | 9/5/2016  |
| 6/10/2016 | 80791 | 6/7/2016  | $28,794.53    | 9/7/2016  |
| 6/10/2016 | 80792 | 6/7/2016  | $28,794.53    | 9/8/2016  |
| 6/11/2016 | 80797 | 6/9/2016  | $28,794.53    | 9/9/2016  |
|           |       | Total     | $1,094,192.14 |           |

16.  Indeed, Defendant recognized the assignment of the Invoices to Turk Eximbank and promised payment of the $1,094,192.14 to Turk Eximbank in six letters executed by Defendant between May 20 and June 24, 2016.

17.  Each letter identified (a) the particular invoices assigned to Turk Eximbank (collectively, the 38 Invoices are included), (b) Defendant's acknowledgment that the subject goods were received in good order, (c) there was no dispute preventing Defendant's payment to Turk Eximbank, (d) Defendant's express acknowledgment that all legal rights concerning the invoices had been assigned to Turk Eximbank, (e) Defendant's promise to pay each of the invoices by their respective due dates, (f) Turk Eximbank's bank details for payment, and (g) notice that any change in banking details would be provided by e-mail and fax from Turk Eximbank.

18.  Defendant initially honored its obligations by making certain payments to Turk Eximbank.

19.  Shortly thereafter, however, the payments stopped and Turk Eximbank was forced to seek the balance owed by Defendant. By mid-August 2016, Elmas was also urging Defendant to "perform all regular payments to [Turk] Eximbank."

20. Thereafter, when additional payments were not forthcoming, Turk Eximbank engaged counsel to seek recovery of the remaining balance. Those efforts resulted in Defendant paying an additional $435,725.89, leaving a principal balance owing of $399,315.48, exclusive of interest, as summarized in the table below.

| Initial Balance | $1,094,192.14 |
|---|---|
| 2016 Payments | $259,150.77 |
| 2017 / 2018 Payments | $435,725.89 |
| **Principal Balance Due** | **$399,315.48** |

21. Despite repeated demands to remit payment for the outstanding amount, and regular communication between counsel, Defendant failed to fulfill its obligations for the remaining principal balance. Defendant refuses to pay Turk Eximbank the amount due and owing based on meritless objections and has no right to withhold payment.

22. Turk Eximbank has performed all of its obligations and satisfied any and all of its obligations.

23. Elmas has performed all of its obligations and satisfied any and all of its obligations.

## COUNT I
## BREACH OF CONTRACT (PROMISSORY NOTES)

24. Plaintiff repeats and realleges each allegation in paragraphs 1 through 23 as if fully set forth at length herein.

25. Around and between May and June 2016, Defendant executed six letter promissory notes in favor of Turk Eximbank ("Letter Notes").

26. Upon issuance of the Letter Notes, each was payable to Turk Eximbank.

27. In the Letter Notes, Defendant unconditionally promised to pay $1,094,192.14 to Turk Eximbank.

COMPLAINT
(Breach of Contract; Account Stated; Action for Price; Unjust Enrichment)
6

28. Each Letter Note identifies a series of amounts to be paid, and the specific due date for each, which, collectively, were between July 20, 2016 and September 9, 2016.

29. The Letter Notes do not state any other undertaking or instruction required from Plaintiff, Defendant, or anyone else, in addition to the payment of money.

30. Defendant breached the terms of each Letter Note by failing to make all payments when due.

31. Turk Eximbank demanded payment for the amounts due and owing under the Letter Notes, but Defendant has failed and refused to make full payment.

32. As a direct and proximate result of Defendant's breaches of the Letter Notes, Turk Eximbank has been damaged in the amount of $399,315.48, as the combined outstanding principal balance due and owing by Defendant under the Letter Notes, and Plaintiff is entitled to damages in that amount, with interest accruing at the Nevada statutory rate of 6.75% per annum (NRS § 17.130(2)) from the due date of each payment listed in each of the Letter Notes until the unpaid amount is paid in full.

## COUNT II
## ACCOUNT STATED

33. Plaintiff repeats and realleges each allegation in paragraphs 1 through 23 as if fully set forth at length herein.

34. Defendant agreed that it was indebted to Plaintiff for $399,315.48 resulting from its purchases from Elmas.

35. Defendant promised to pay $399,315.48 to Plaintiff.

36. Plaintiff agreed to accept $399,315.48 from Defendant.

37. By failing to object to the outstanding balance as stated in the statements issued by Turk Eximbank to Defendant, and by expressly accepting them and the amounts owed, Defendant has agreed that it owes Turk Eximbank the sum of $399,315.48.

38. As a result of Defendant's failure to pay the accounts stated, Turk Eximbank has been damaged in the amount of $399,315.48 plus interest accruing at the Nevada statutory rate of 6.75% per annum (NRS § 17.130(2)) from the date of default of each of the Invoices until the unpaid amount is paid in full.

## COUNT III
## BREACH OF CONTRACT

39. Plaintiff repeats and realleges each allegation in paragraphs 1 through 23 as if fully set forth at length herein.

40. Around and between November 2015 and August 2016, Defendant ordered and purchased fig products identified on the Invoices from Elmas.

41. Around and between April and August 2016, Elmas caused the shipment of such fig products identified on the Invoices to Defendant. Around and between April and August 2016, Defendant received, accepted, and retained the fig product shipments identified on the Invoices. Around and between April and August 2016, Elmas issued and Defendant received the Invoices for the fig products shipped and received, totaling $1,094,192.14.

42. Around and between April and August 2016, Elmas assigned the Invoices to Turk Eximbank. Defendant acknowledged and accepted the assignments to Turk Eximbank and promised payment to Turk Eximbank. Turk Eximbank performed all conditions required for payment against the Invoices. Defendant failed to pay the full balance owed under the Invoices to Turk Eximbank.

43. Turk Eximbank has made demand for payment, and Defendant has failed and refused to make payment against such. Defendant's failure and refusal to pay the outstanding amounts due to Turk Eximbank constitute material breaches of contract.

44. As a direct and proximate result of Defendant's breaches, Turk Eximbank has been damaged in the amount of $399,315.48, as the outstanding balance due and owing by Defendant for the unpaid Invoices, and is entitled to damages in that amount with interest accruing at the Nevada statutory rate of 6.75% per annum (NRS § 17.130(2)) from the date of default of each of the Invoices until the unpaid amount is paid in full.

## COUNT IV
## ACTION FOR PRICE PURSUANT TO NRS § 104.2709

45. Plaintiff repeats and realleges each allegation in paragraphs 1 through 23 as if fully set forth at length herein. Elmas and Defendant are merchants generally engaged in the business of selling, buying and trading goods of the type that are the subject of this action.

46. Around and between April and August 2016, Elmas sold and delivered to Defendant, and Defendant accepted and retained the fig paste reflected on the Invoices at the agreed price and reasonable value of $1,094,192.14.

47. Defendant failed to make full payment against the Invoices.

48. Plaintiff has made demand upon Defendant for the balance due, but Defendant has refused and failed to make payment.

49. Because Defendant has not paid for the goods provided, Plaintiff is entitled to damages for recovery of the price pursuant to NRS § 104.2709.

## COUNT V
## UNJUST ENRICHMENT

50. Plaintiff repeats and realleges each allegation in paragraphs 1 through 23 as if fully set forth at length herein.

51. Elmas conferred a benefit on Defendant by selling and delivering the fig products to Defendant.

52. Defendant knew or reasonably should have known that Elmas and Turk Eximbank reasonably expected to be paid at the agreed prices for the sale of fig products to Defendant.

53. The amount for which Plaintiff seeks reimbursement, which is equal to the value of the fig products sold to Defendant, is reasonable.

54. Defendant would be unjustly enriched if it were allowed to retain the benefit of having received the fig products without having paid for their agreed reasonable value. Therefore, Defendant owes Plaintiff $399,315.48 plus interest from the invoice date of each invoice until the unpaid amount is paid in full.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Turk Eximbank prays for relief as follows:

55. Awarding Plaintiff the sum of $399,315.48, plus pre-judgment interest from the date of default of each unpaid invoice to the date of judgment;

56. Awarding Plaintiff post-judgment interest at the statutory rate from the date of judgment until satisfaction of the judgment;

57. Awarding Plaintiff its reasonable attorney's fees, costs and disbursements; and

58. Awarding Plaintiff any other relief the Court deems just and proper.

DATED: June 4, 2020

ERICKSON, THORPE & SWAINSTON, LTD.

By: /s/ John C. Boyden
John C. Boyden (Nevada State Bar No. 3917)
jboyden@etsreno.com
99 West Arroyo Street
Reno, Nevada 89509
Telephone: (775) 786-3930

*Attorneys for Plaintiff Türkiye Ihracat Kredi Bankasi A.Ş.*