UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TURKIEY IHRACAT KREDI BANKASI, A.S.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NATURE'S BAKERY, LLC f/k/a BELLA FOUR BAKERY, INC.,<br><br>　　　　Defendant. | Case No. 3:20-cv-00330-LRH-EJY |
| NATURE'S BAKERY, LLC f/k/a BELLA FOUR BAKERY, INC.,<br><br>　　　　Third Party Plaintiff,<br><br>　v.<br><br>INTRANSIA LLC,<br><br>　　　　Third Party Defendant. | **REPORT AND RECOMMENDATION**<br><br>**RE:  Motion to Dismiss (ECF No. 45)** |
| INTRANSIA LLC,<br><br>　　　　Counterclaimant,<br><br>　v.<br><br>NATURE'S BAKERY, LLC f/k/a BELLA FOUR BAKERY, INC., and DOES I-X, inclusive,<br><br>　　　　Counterdefendants. | |
| INTRANSIA LLC,<br><br>　　　　Cross Claimant,<br><br>　v.<br><br>TURKIYE IHRACAT KREDI BANKASI, A.S., and DOES XI-XX, inclusive,<br><br>　　　　Cross Defendants. | |

Pending before the Court is the Motion to Dismiss Third-Party Defendant's Rule 14(a) Claim and/or in the Alternative to Transfer Venue Pursuant to 28 USC § 1404(a) and Memorandum of

Points and Authorities in Support (ECF No. 45).[1] The Court has considered the Motion, Intransia LLC's Opposition (ECF No. 47), and Plaintiff's Reply (ECF No. 48). The Motion to Dismiss was referred to the undersigned Magistrate Judge for a Report and Recommendation.

**I.   Background**

   A.   Summary of Plaintiff's Argument.

Plaintiff Türkiye Ihracat Kredi Bankasi A.Ş. ("Plaintiff") is a state owned financial institution that supports Turkish exporters. ECF No. 45 at 4. Plaintiff filed a Complaint against Defendant Nature's Bakery (the "Bakery") in June 2020, seeking recovery of alleged unpaid receivables due Elmas Dis Tricaret A.S. ("Elmas") arising from fig paste Elmas shipped to the Bakery in 2016. ECF No. 1 ¶¶ 13-14 (explaining there were 38 invoices (the "Invoices") assigned by Elmas to Plaintiff during the period April 29 through June 9, 2016). Plaintiff had a credit relationship with Elmas and apparently assisted Elmas with the export of fig paste to the Bakery that resulted in the receivables due from the Bakery to Elmas. *Id.* Plaintiff's Complaint explains that while Elmas ultimately paid close to $600,000 owed to Plaintiff, a balance of $399,315.48 remains due for the Invoices. *Id.* ¶ 20.

When the Bakery answered Plaintiff's Complaint, it filed a third party complaint against Intransia LLC ("Intransia") asserting a breach of contract claim. ECF No. 45 at 3-4. The third party complaint prompted Intransia to file cross-claims against Plaintiff and Doe Defendants (the "Cross-Claims"). ECF No. 36 at 19-28. Intransia's Cross-Claims include Breach of Contract, Indemnity, Unjust Enrichment, and Declaratory Relief. *Id.* Plaintiff argues that the Cross-Claims should be transferred to the U.S. District Court for the District of New Jersey and, if not transferred, dismissed. ECF 45 at 2.

Intransia is a Florida limited liability company (ECF No. 47 at 2), which Plaintiff alleges "assisted Elmas and … [the] Bakery in meeting certain U.S. import requirements and delivering product to … [the] Bakery." ECF No. 45 at 4. Plaintiff contends there is no legal relationship between itself and Intransia, and there is no connection between the assignment of Elmas' receivables to Plaintiff and any amount Intransia claims are due. *Id.* Plaintiff points out that Intransia

---

[1] Hereinafter, the pending motion shall be referred to as the "Motion."

alleges claims against Plaintiff based on terms and conditions contained in a power of attorney Elmas granted to Intransia (the "Elmas POA") and bills of lading Intransia issued identifying Elmas as the shipper and cosigner. *Id*. at 3. However, Plaintiff further argues that the power of attorney Intransia attached to its Cross-Claims is between Intransia and the Bakery.[2] *Id*. at 9 *citing* ECF No. 36-1 at 2-4. There appears to be no dispute that the Elmas POA was not assigned by Elmas to Plaintiff. *Id*. at 9.

Plaintiff states that the bills of lading attached as exhibits to the Cross-Claim are for the month of August 2016, which does not coincide with the time period for which Plaintiff asserts claims. ECF No. 45 at 10-11 *citing* ECF No. 36-1 at 2-4. Nor is there any evidence that the bills of lading mention Plaintiff. ECF No. 36-1 at 6-11. Plaintiff concludes there is a lack of privity between itself and Intransia that is "fatal" to Intransia's breach of contract claim. ECF No. 45 at 8.

Plaintiff further argues that Intransia's unjust enrichment claim should be dismissed because (i) any benefit conferred by Intransia flowed to Elmas, (ii) Intransia alleges the existence of an express contract that legally precludes a claim of unjust enrichment, and (iii) the connection between Plaintiff and Intransia is too attenuated to support an unjust enrichment claim. *Id*. at 11-12. With respect to attenuation, Plaintiff states that its "only connection to Intransia is that … [it] financed and was assigned certain Elmas receivables for underlying shipments where Intransia acted as the customs broker." *Id*. at 12.

Plaintiff argues that the indemnity claim asserted by Intransia is based on the Bakery's breach of contract claim against Intransia, and fails as a matter of law. *Id*. at 13. Citing to Minnesota law, which governs the Elmas POA, Plaintiff states that a party seeking indemnity must incur liability based on a breach of duty owed by the entity against whom indemnification will be imposed. *Id*. Plaintiff further explains that this claim supposedly arises from an instruction given by Elmas to the Bakery to pay Intransia $130,046.62 in satisfaction of that amount owed by Elmas to Intransia. *Id*. *citing* ECF No. 36 ¶ 13. However, Plaintiff says, Intransia agreed to indemnify the Bakery against

---

[2] As explained in greater detail below, Plaintiff is correct. The power of attorney Intransia attached to its Cross-Claim against Plaintiff is not between Elmas and Intransia, but between the Bakery and Intransia. *See* ECF No. 36-1 at 2. Nonetheless, for sake of consistency with the Motion, Opposition, and Reply, the Court refers to this power of attorney as the Elmas POA.

any claims made "by or for Elmas." *Id*. Plaintiff contends that Intransia claims an entitlement to indemnification by Plaintiff based on a clause in the Elmas POA requiring Elmas to defend any claims "arising from the importation or exportation of Customer's merchandise … ." *Id*. at 13-14 *citing* ECF No. 36 ¶ 75. Plaintiff concludes that absent an assignment of rights by Elmas to Plaintiff "relating to the Elmas-Intransia relationship," Intransia has no indemnification rights it can assert against Plaintiff. *Id*. at 14.

Plaintiff also takes issue with Intransia's declaratory relief claim correctly pointing out that the claim is brought under the wrong law (state rather than federal), and even if realleged under the federal Declaratory Judgment Act ("DJA"), the claim must be dismissed because there is no case or controversy subject to the DJA as there is no contract between Plaintiff and Intransia. *Id*. at 14-15. Plaintiff adds that the DJA is not a stand-alone claim, thus also leading to dismissal. *Id*. at 15.

Finally, Plaintiff argues that Intransia's Doe pleadings must be dismissed, and that the Elmas POA requires this matter be transferred to the U.S. District Court for the District of New Jersey because the POA includes a forum selection clause identifying New Jersey state or federal courts as the jurisdiction in which any dispute must be resolved. *Id*. at 5 and 15-16.

B.   Summary of Intransia's Argument.

Intransia begins its arguments with the contention that this matter "is a very simple dispute." ECF No. 47 at 2. Intransia states that Elmas sold fig paste to the Bakery and "contracted with Intransia to facilitate delivery." *Id*. The Invoices issued to the Bakery by Elmas included not only the cost of goods, but also "the cost of freight and insurance ultimately due to Intransia." *Id*. Elmas assigned some of the invoices to Plaintiff, Plaintiff seeks to collect on these Invoices from the Bakery, and "the cost of goods …, freight[,] and insurance … has already been earned by Intransia." *Id*. at 2-3. Intransia argues that Plaintiff's right to collect from the Bakery on the assigned Invoices does not give it the right to collect the freight fees due Intransia "leaving Intransia empty handed." *Id*. at 3.

Intransia refers the Court to Plaintiff's Complaint in which Plaintiff lists 38 Invoices, stating that Plaintiff "confirmed that it was assigned all legal rights concerning the Invoices." *Id*. *citing* ECF No. 1 at 4:2-3, 5:16-17. The Invoices, which are attached as Exhibit 1 to Intransia's Opposition,

shows a total "CIF" amount that includes the cost of insurance and freight. ECF No. 47-1 at 2-26. Intransia contends that included in its Exhibit 1 are not only those Invoices on which Plaintiff seeks to recover from the Bakery, but additional invoices on which Plaintiff is listed as the "assigned bank … for which Intransia was not paid for services rendered." ECF No. 47 at 3-4. Intransia claims that Plaintiff has received partial payments on the invoices, "including the amount due to Intransia for freight and insurance services," that Plaintiff has not identified on which invoices it has received payment or whether the invoices "include fees due to Intransia," and that, "on information and belief," Plaintiff may have collected additional funds that include amounts due Intransia. *Id*. at 4.

Intransia avers that because Plaintiff was assigned Elmas receivables from the Bakery and brings suit against the Bakery based on these receivables, Plaintiff "stands in Elmas' shoes, subject to any offsets arising between Intransia and Elmas … ." *Id*. Intransia's argument in support of this conclusion is as follows: (i) the costs of freight and insurance due Intransia by Elmas is on the face of each Invoice on which Plaintiff seeks to recover; (ii) each shipment evidenced by the Invoices "was accompanied by a corresponding bill of lading"; (iii) the bills of lading "are binding contracts" to which Elmas was bound; (iv) the bills of lading are "inextricably tied to each shipment reflected on the Elmas Invoices"; and (v) therefore, Plaintiff is "bound by the bills of lading … ." *Id*. at 5-6. According to Intransia, by bringing suit on the Invoices assigned, Plaintiff "has accepted the terms of the bills of lading that bound Elmas … ." *Id*. at 6. Without citation, Intransia states Plaintiff "cannot assert a right to payment on the Elmas Invoices while simultaneously denying the obligation to pay the freight carrier who delivered the cargo and who's [sic] fee is clearly listed on the fact of each invoice … ." *Id*.

With respect to its unjust enrichment claim, Intransia states that it may bring inconsistent claims based on both the existence and absence of a contract. *Id*. Intransia does not respond to Plaintiff's attenuation argument. *Id*.

Intransia also tell the Court that its DJA claim is properly pled because the claim it asserts is not hypothetical or abstract, but "presented … on a specific set of fact." *Id*. at 7. Intransia takes issue with Plaintiff's contention that a DJA claim is not a stand-alone cause of action noting other

5

cases in the District of Nevada in which declaratory relief was granted on claims that "will clarify and settle the legal relations at issue … ." *Id*. at 8-9 (internal citations omitted).

Intransia claims Plaintiff must indemnify Intransia against the Bakery's third party claims because when Plaintiff was assigned the Invoices by Elmas, Plaintiff stepped into Elmas' shoes and could not take assignment of these Invoices from Elmas "without offsets arising out of accounts between Intransia and Elmas related to the … Invoices." *Id*. at 9. Intransia also claims that its Doe pleadings must survive, despite recognizing that such pleadings are disfavored by federal courts, because Intransia has just commenced discovery and should be entitled to "discover the identity of the Doe Defendants before its claims are dismissed." *Id*. at 13.

With respect to Plaintiff's attempt to change venue to the District of New Jersey, Intransia distinguishes cases on which Plaintiff relied and argues that in those cases the entire action was transferred to a different venue while here only Intransia's third party claims against Plaintiff, which are intertwined with all other pending claims, would be transferred. *Id*. at 10-11. Intransia states that it is inefficient to separate these claims. *Id*. at 11. Intransia also states that enforcing the forum selection clause in the power of attorney Elmas executed in favor of Intransia "would be illogical, and could deny Intransia its day in court because it would preclude it from adequately defending against the claims brough by … [the] Bakery." *Id*. at 12.

C.      Plaintiff's Reply.

Plaintiff returns to the subject of Intransia's reliance on the POA between Elmas and Intransia and, again explains that the exhibit Intransia attached to its Cross-Claims is a power of attorney between the Bakery and Elmas. ECF No. 48 at 2 *citing* ECF no. 36-1, Ex. 1. Plaintiff states that Intransia attaches three new exhibits to its Opposition to Plaintiff's Motion including Elmas Invoices to the Bakery, invoices from a non-party entity—Intransia Uluslararasi Lojistik Nakliye T¡c. Ltd. ŞT¡. ("Intransia Turkey")—issued to Elmas, and the actual power of attorney between Elmas and Intransia. *Id*. at 2-3 *citing* ECF No. 47-1. Plaintiff contends these exhibits demonstrate that Intransia lacks standing to proceed against Plaintiff. *Id*. at 2-3.

Plaintiff argues that the Elmas POA, attached to the Cross-Claim, cannot be replaced by an exhibit attached to an opposition to a motion to dismiss, and that, in any event, the power of attorney

6

on which Intransia now relies is still not between Elmas and Intransia, but between Elmas and a "Company" defined, in the proposed replacement power of attorney (the "Replacement POA"), as Export-Import Services, Inc. ("Export-Import"). *Id*. at 3; *see also* ECF No. 47-1 at 71. Plaintiff argues that, in its Opposition, Intransia altered a definition that appears in the Replacement POA by inserting itself in the definition. *Id*.[3] Plaintiff claims that Export-Import is a family business located in New Jersey, and is not an affiliate of Intransia. ECF No. 48 at 3. Plaintiff cites Intransia's Cross-Claim at paragraph 10, but this paragraph does not state that Export-Import is a family business or that the business is located in New Jersey. ECF No. 36 at 21-22 ¶ 10.

Setting all of these factual intricacies aside, Plaintiff concludes that neither the Replacement POA nor any other exhibit attached to Intransia's Opposition supports the allegation that Intransia is owed money by Elmas. According to Plaintiff, Intransia fails to state an injury in fact and therefore lacks standing to bring a claim against Plaintiff. Plaintiff also contends Intransia does not demonstrate how it is owed money from Elmas for invoices issued by Intransia Turkey, which is fatal to its claims.

Plaintiff returns to the allegation that the contract claim asserted by Intransia against Plaintiff fails because the Invoices assigned by Elmas, which were Invoices issued to the Bakery, do not establish privity of contract between Plaintiff and Intransia. Plaintiff argues there are two separate contractual relationship that Intransia has presented: one between Elmas and the Bakery arising from purchase of fig paste, and the other between Intransia and Elmas for shipping services. ECF No. 48 at 5. Intransia's attempt to intertwine these contractual relationships must fail because Intransia has no rights against Plaintiff arising from either of these contracts. *Id.*

Introducing a new theory, Plaintiff claims that Intransia is not an intended third party beneficiary of the Elmas-Bakery relationship. Plaintiff also states that the Replacement POA granted "no rights to Intransia and Elmas never assigned such rights … ." *Id.* at 6. Plaintiff further reiterates that the bills of lading do not establish a basis upon which Intransia may sue. *Id*. at 7. The assignment of invoices owed by the Bakery to Elmas do not result in liability under related bills of

---

[3] This is true; however, the Court notes that the Replacement POA does state that Elmas "appoints … Intransia, LLC, … as a true and lawful agent and attorney of the grantor [Elmas] named above … ." ECF No. 47-1 at 71.

1  lading. *Id*. Without evidence that Elmas ever intended to assign any rights related to its relationship with Intransia, and in the absence of any documentation supporting an assignment, Plaintiff concludes that all of Intransia's contract claims against Plaintiff fail. *Id*. at 8.

With respect to Intransia's unjust enrichment claim, and returning to its argument of attenuation, Plaintiff states that it financed Elmas' receivables; whereas, Intransia acted as Elmas' customs broker. *Id*. at 9. As such, Plaintiff avers it received no benefit from Intransia and had no reason to even know of Intransia. *Id*. And, as for Intransia's DJA claim, Plaintiff argues this is duplicative of the contract claim, which, when resolved, will obviate the need for declaratory relief. *Id*. at 10.

**II.     Discussion**

A.     <u>Plaintiff's Request for Change of Venue is Denied</u>.

The Court begins its analysis with Plaintiff's request for a change of venue because if a change of venue were granted, the Court would not reach any other issue raised.

Under 28 U.S.C. § 1404(a), a district court has discretion to "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir. 2000) (*citing Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988)). Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought ... ." The burden is on the movant to make the strong showing that a change of venue is warranted. *See Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2nd 834, 843 (9th Cir. 1986). A decision to transfer is committed to the sound discretion of the trial court.

In this case, it is Plaintiff, not Intransia, that seeks to enforce a forum selection clause appearing the in paragraph 21 of the Elmas POA. ECF No. 36-1 at 4. Paragraph 21 states: "the parties … irrevocably consent to the jurisdiction of the United States District Court and the State Courts of New Jersey." *Id* at 4. However, Plaintiff repeatedly and correctly argues that Plaintiff is not a party to the Elmas POA. ECF No. 36-1 at 2. There is no allegation that the Elmas POA was assigned to Plaintiff by the Bakery (who signed this POA) or anyone else. ECF No. 36 at 20-28. Plaintiff also disavows any such assignment. Given the facts that are and are not alleged in

8

1    Intransia's Cross-Claims, there is no basis for the Court to enforce the choice of venue provision in
2    the Elmas POA as to Intransia's Cross-Claim against Plaintiff.

3    Further, the Ninth Circuit hold that "[g]enerally, courts may not consider materials beyond
4    the pleadings in ruling on a Federal Rule of Civil Procedure 12(b)(6) motion. … There are two
5    exceptions to this rule: First, a court may consider '"material which is properly submitted as part of
6    the complaint' on a motion to dismiss. … Second, under Federal Rule of Evidence 201, a court may
7    take judicial notice of 'matters of public record.'" *Stanley v. Bobo Construction, Inc*. Case No. 14-
8    cv-00035-JAM-EFB, 2014 WL 1400957, at *2 (E.D. Ca. Apr. 10, 2014) (internal citations and quote
9    marks omitted). While a change of venue is not a 12(b)(6) motion, the Court nonetheless notes that
10   neither exception applies to the Replacement POA. Further, even if the Court were to consider the
11   Replacement POA, there is no allegation that it was ever assigned to Plaintiff. In fact, Intransia's
12   Cross-Claim asserts no such allegation and Plaintiff disavows any such assignment. ECF Nos. 36-
13   1 at 20-24 ¶¶ 8-23; 45 at 3, 4; 48 at 6, 7, 8.

14   Because the Court finds no contractual basis for granting a change of venue, the Court
15   considers whether there is any other basis to do so. "In the typical case not involving a forum-
16   selection clause, a district court considering a [section] 1404(a) motion ... must evaluate both the
17   convenience of the parties and various public-interest considerations." *Atlantic Marine Const. Co.,*
18   *Inc. v. United States District Court*, 571 U.S. 49, 62 (2013). If the action could have been brought
19   in the target district, courts then undertake an "individualized, case-by-case consideration of
20   convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van*
21   *Dusen v. Barrack*, 376 U.S. 612, 622 (1964)) (internal quotation marks omitted). Relevant factors
22   the Court may consider include: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3)
23   convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with
24   the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the
25   controversy, and (8) the relative court congestion and time of trial in each forum." *Vu v. Ortho-*
26   *McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009).

27   As Intransia points out, Plaintiff chose the District of Nevada to bring its case. There appears
28   to be no more convenience of the parties, witnesses, access to evidence or local interest in the

9

controversy in New Jersey than there is Nevada. There is no claim pending in New Jersey with which the Cross-Claims would be consolidated, and there is no New Jersey law that applies to this case. Congestion of the courts is not at issue as both district are busy and trial is a long way off. Moreover, Intransia, who is a party to the Elmas and Replacement POAs, does not seek a change of venue, and argues that the allegations in this case are intertwined at least for purposes of analyzing the relationship of the parties. In sum, consideration of the factors applicable to a change of venue in the absence of a contractual provision fail to support the change requested. Thus, even upon considering Plaintiff's Motion as arising under Section 1401(a), the Court finds a change of venue is not proper. The Court recommends denial of this request.

      B.      <u>The Court Recommends Dismissal of Intransia's Breach of Contract and Indemnification Claims</u>.

Plaintiff correctly points out that it is not a party to, nor is there any allegation that there was an assignment of, either the Elmas or the Replacement POA. ECF Nos. 36 at 20 ¶ 5; 36-1 at 2-4; 45 at 3, 4; 47-1 at 71-73; 48 at 6, 7, 8. Therefore, to the extent Intransia asserts contractually based claims (Counts One and Four) based on either power of attorney, those claims fail at the pleading stage because there is no alleged contract upon which Intransia may sue Plaintiff for breach of contract or any term therein.[4] *Williams v. Emeritus Corp.*, Case No. 2:11-cv-01497-MMD-RJJ, 2012 WL 3562774, at *2 (D. Nev. Aug. 17, 2012).

However, Intransia also argues that the Invoices at issue include not only the cost of goods, but also the costs of freight and insurance, and the assignment of these Invoices placed Plaintiff in the Elmas' shoes "subject to any offsets arising between Intransia and Elmas … subject to the Elmas Power of Attorney." ECF No. 47 at 4. Setting aside the powers of attorney as there is no allegation that either was ever assigned to Plaintiff, there is also no allegation that the assignment of the

---

[4] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. … . The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. … . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" (Internal quote marks and citations to *Towmbly* omitted.)

Invoices included a requirement that Plaintiff pay Intransia anything. Plaintiff's Complaint against the Bakery states, in relevant part, that: (i) a contract executed between Elmas and the Bakery for delivery of fig paste identifies the payment terms and "that payment was to be made to Plaintiff." (ECF No. 1 at 3 ¶ 10); (ii) that in accordance with its "export credit discount program, in which Elmas participated, [Plaintiff] was assigned the rights to 38 invoices" (*Id*. at 4 ¶ 14); and, (iii) the Bakery acknowledged the assignment, but ultimately failed to make all payments. *Id*. at 5-6 ¶¶ 16-21. There is nothing in Plaintiff's Complaint with respect to any amounts owed to Intransia by Elmas or the Bakery. Importantly, Intransia's Cross-Claim is equally silent on the subject of any assignment or agreement between Elmas and Plaintiff regarding payment of any amounts by Plaintiff to Intransia. ECF No. 36 at 20 ¶ 8 – 25 ¶ 23.

In *Romero v. S. Schwab Company, Inc.*, the court states that "[a]n assignment carries with it all the *rights* of the assignor." Case No. 15-CV-815-GPC-MDD, 2018 WL 1444574, at *5 (S.D. Cal. Mar. 23, 2018) *citing Johnson v. Cnty. of Fresno*, 111 Cal. App. 4th 1087, 1096 (2003). The court in *Romero* goes on to state that an "assignment *merely transfers the interest of the assignor*. The assignee 'stands in the shoes' of the assignor, taking his rights and remedies, subject to any *defenses which the obligor has against the assignor* prior to notice of the assignment." *Id. citing Johnson* at *id*. (Emphasis added.) Looking also to Nevada law, as the Bakery was located in Reno, Nevada (ECF No. 47-1 at 2), the Court notes the Nevada Supreme Court stated, when discussing a no-oral-modification contract clause, that "[a]n assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and assignee which merely *transfers the assignor's contract rights*, leaving them in full force and effect as to the party charged." *Easton Bus. Opp. V. Town Executive Suites*, 230 P.3d 827, 831 (Nev. 2010) (internal citation omitted).

The holding of these cases do not support Intransia's contention that when Elmas assigned its rights to receive payment from the Bakery, Plaintiff took that assignment subject to any amounts allegedly due Intransia by Elmas. Intransia was neither the obligor nor the assignor under the Invoices. Rather, Plaintiff took the rights and remedies of Elmas, the assignor, subject to any defenses which Elmas has against Plaintiff.

11

Intransia cites to *U.S. for Use of White v. Thompson & Georgeson, Inc.*, 346 F.2d 865 (9th 1965); however, this decision is not applicable to the case at bar. In *Use of White*, the Ninth Circuit explained that Thompson & Georgeson ("T&G") was the prime contractor on a contract with the United States Army Corp of Engineers (the "U.S.") to build a two mile access road. *Id*. at 866. T&G subcontracted the construction of the road to D.V. Construction Co. ("Dunbar"). *Id*. The subcontract required Dunbar to comply with the general contract to the complete satisfaction of the U.S. *Id*. By November 1960 "Dunbar's job creditors had submitted to T&G claims which exceeded Dunbar's earnings at that time." *Id*. The terms of the subcontract allowed T&G to, *inter alia*, withhold payments to Dunbar in order to pay Dunbar's bills. *Id*. White, a supplier to whom Dunbar owed money arising from the T&G subcontract, entered into an assignment with Dunbar that assigned to White all past and future amounts due from T&G to Dunbar on the subcontract. *Id*. 866-67. White agreed, among other things, that any amounts received from T&G would first go to Dunbar's bills on the subcontract and then to amounts Dunbar owed White. *Id*. at 867. White and T&G also entered into an agreement in which T&G recognized the assignment, T&G immediately paid White $7,050.44, and White agreed to be responsible for future labor, materials, and equipment rentals. *Id*. White also indemnified and held T&G harmless from these future charges. *Id*.

Ultimately, Dunbar failed to complete the project, T&G completed the project, and the U.S. rejected the completion for failing to comply with the terms of the primary contract. *Id*. T&G corrected the defects at a cost of $9,859.75, and the U.S. thereafter accepted the road as complete. *Id*. When the contract was completed $12,714.99 in bills remained due by Dunbar to its suppliers, some of which White had agreed to pay before contract completion. *Id*. White then gave T&G notice of White's termination of its indemnification of T&G without paying the outstanding amounts. *Id*. T&G demanded White pay these bills, which White did not do. *Id*. at 867-68. White subsequently sued T&G, and, at the time of appeal, sought the difference between Dunbar's subcontract price and the amount T&G paid Dunbar and White as Dunbar's assignee. *Id*. at 868.

The Ninth Circuit found that in Dunbar's subcontract with T&G, Dunbar in effect stated "that if claims were made by Dunbar's job creditors for which T&G might be held liable, then T&G may retain out of the moneys due or to become due (Dunbar) an amount sufficient to indemnify against

liability or loss by reason of such lien or claim, including the cost of litigation, and attorney fees." *Id*. Thus, the amount T&G ultimately paid to obtain releases by those to whom Dunbar owed money (including amounts White had not paid), and its attorney's fees incurred for obtaining those releases, were chargeable to Dunbar. *Id*. at 868-69. However, the amount T&G already paid Dunbar "exhaust[ed] the remainder of Dunbar's contract price." *Id*. at 869.

White claimed that T&G's payments to Dunbar's creditors and T&G's attorney's fees were expended after White gave notice of termination of its obligation to indemnify T&G, but the court found this argument unavailing. *Id*. The court found White was suing as an assignee of Dunbar, stood in Dunbar's shoes, and the assignment contained no suggestion that White would obtain contract money from T&G without T&G paying amounts arising out of Dunbar's contract with T&G. *Id*. White could not recover from T&G because T&G owed nothing to Dunbar. *Id*. The Court stated:

> [m]erely as assignee one does not become affirmatively liable for a deficit in the accounts between his assignor and the other party to the assigned contract. Any such liability would have to be based upon an affirmative assumption, by the assignee, of the obligations of his assignor on the contract, or upon some independent contractual arrangement.

The above is either something Intransia missed in its reliance on *Use of White* or failed to understand as this holding is contrary to Intransia's position. That is, Plaintiff, as assignee of the Invoices through which Elmas is owed money by the Bakery, is not liable by virtue of that assignment for amounts owed by Elmas, the assignor, to Intransia. There is no allegation of an affirmative assumption of such debt by Plaintiff, and there is no independent contractual arrangement alleged to otherwise create Plaintiff's liability. For this reason, the Court finds the assignment of the Invoices does not provide Intransia with breach of contract or indemnification claim against Plaintiff.

The bills of lading, on which Intransia also relies, may be contracts of adhesion and correspond to the invoices, as Intransia states, but there is nothing alleged to suggest these contracts were assigned by Elmas to Plaintiff. A bill of lading "is the basic transportation contract between the shipper/consignor and the carrier, the terms and conditions of which bind the shipper and all connecting carriers." *Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.*, 513 F.3d 949, 954 (9th Cir. 2008). Intransia defines Elmas at the "Cosignor" and "Merchant"; whereas, the identity

of the carrier or "Freight Forwarder," a phrase appearing in the definitions applicable to the bills of lading, is not entirely clear from the face of the documents. ECF No. 36-1 at 6-11. Intransia, LLC, the Cross-Claimant, and Intransia Turkey, both appear on the face of each bill of lading. *Id*. Plaintiff appears nowhere on the bills of lading. *Id*. And, at the risk of redundancy, there is also no allegation by Intransia in its Cross-Claim that Elmas assigned the bills of lading to Plaintiff, that Plaintiff took assignment of the Invoices subject to the bills of lading, or that either power of attorney was assigned to Plaintiff.

Plaintiff has not filed suit on the bills of lading, but on invoices owed by the Bakery to Elmas that were assigned to Plaintiff. Intransia does not explain how, and offers no law to support the conclusion that, Elmas' assignment of one contract (the Invoices) to Plaintiff somehow automatically incorporated obligations appearing in a separate contract (the bills of lading). Intransia also offers no explanation or supporting citation leading to the conclusion that suing on one assigned contract somehow automatically demonstrates assignment or acceptance of another contract. *See* ECF No. 47. Contrary to Intransia's desire, Nevada law does not support the conclusion there was a valid assignment of these contracts. "It is essential that in order for there to be a legal assignment of rights, the obligee must *manifest an intention* to transfer the right to another person." *Stuhmer v. Centaur Sculpture Galleries*, 871 P.2d 327, 331 (Nev. 1994) *citing* Restatement (Second) of Contracts § 324 at 37 (1979).

Further, the definitions applicable to the bills of lading, which Intransia filed with the Court at ECF No. 36-1 at 11, states that "[a]ctions *against* the Freight Forwarder may be instituted only in the place where the Freight Forwarder has his place of business as stated on the reverse side of this BL [bill of lading] and shall be decided according to the law of the country in which that place of business is situated." (Emphasis added.) The face of the bills of lading list Intransia as located in Boca Raton, Florida. *Id*. at 6. There is also a stamp on the front of these documents for Intransia Turkey listing Istanbul, Turkey as the address for this entity. Intransia does not argue that Florida law or the law of Turkey applies to the bills of lading to which it alleges Plaintiff is somehow bound. In fact, the only law Intransia cites is Ninth Circuit law, which does not address assignment, but instead stands for the proposition that when a party sues on a contract, the party accepts the terms of

that contract. ECF No. 47 at 6. Of course, this is not a case brought *against* Intransia, but rather a case brought *by* Intransia against Plaintiff. Further, not only did Plaintiff not sue Intransia, Plaintiff did not sue the Bakery based on terms in the bills of lading. ECF No. 1.

In sum, in the absence of any allegation that Elmas manifested an intent to assign the powers of attorney or bills of lading to Plaintiff, and in the absence of any allegation to support the conclusion that Plaintiff affirmatively assumed the duty to pay Intransia anything, the Court finds there is no contract upon which Intransia may sue Plaintiff for Breach of Contract or Indemnification. For these reasons, the Court recommends these claims be dismissed.[5]

    C.  <u>Intransia's Unjust Enrichment Claim Should Survive the Motion to Dismiss</u>.

To state a claim of unjust enrichment a party must alleged that there was a benefit conferred by the suing party on the party being sued, appreciation of that benefit, acceptance and retention of the benefit, and circumstances where it would be inequitable to retain the benefit without payment. *Kennedy v. Carriage Cemetery Services, Inc.*, 727 F.Supp.2d 925, 932 (D. Nev. 2010) *citing Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (quoting *Unionamerica v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981) (quoting *Dass v. Epplen*, 424 P.2d 779, 780 (Colo. 1967). "Unjust enrichment is an equitable substitute for a contract, and an action for unjust enrichment therefore cannot lie where there is an express written agreement." *Id*. (internal citations omitted).[6] An indirect benefit will support an unjust enrichment claim. *WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, 750 F.Supp.2d 1180, 1196 (D. Nev. 2010) *citing Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992).

---

[5] In its Reply, Plaintiff argues that Intransia is not an intended third-party beneficiary of the Elmas-Bakery Invoices. ECF No. 48 at 6. Intransia has not argued it is a third-party beneficiary in its Opposition to the Motion to Dismiss. *See* ECF No. 47. Intransia's Cross-Claim against Plaintiff also does not allege contractual-based claims on a third party beneficiary theory. ECF No. 36 at 19 ¶ 1 through 28 ¶ 77. There is no reason for the Court to consider this argument under these circumstances. Further, because the Court finds there is no contractual basis upon which Intransia may sue, it does not reach the issue of standing.

[6] Despite Plaintiff's contention to the contrary, Fed. R. Civ. P. 8(d)(2 and 3) allow "[a] party [to] set out 2 or more statements of a claim or defense alternatively or hypothetically" and "state as many separate claims ... as it has, regardless of consistency. This includes simultaneous claims for breach of contract and unjust enrichment." *Braden v. State Farm Mutual Auto Insurance Company*, Case No. 2:18-cv-01741-APG-NJK, 2019 WL 2176919, at *2 (D. Nev. May 20, 2019) (internal citation and quote marks omitted). Plaintiff's efforts to dismiss Intransia's unjust enrichment claim based solely on the simultaneous Cross-Claim for breach of contract fails as a matter of law.

Conferring a benefit in the context of an unjust enrichment claim may include "services beneficial to or at the request of the other, … [or] denotes any form of advantage, and is not confined to retention of money or property." *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012) (internal citations and quotation marks omitted). "[P]rinciples of unjust enrichment will not support the imposition of a liability that leaves an innocent recipient worse off ... than if the transaction with the claimant had never taken place." *Id*. (internal citations omitted).

Here, Plaintiff paints itself as an innocent party; however, the Elmas Invoices, on their face, include the costs of freight and insurance. ECF No. 47-1 at 2-26. To the extent payment of these Invoices by the Bakery include amounts claimed to be due to Intransia, these payments are for services (delivery of the fig paste) allegedly conferred on Plaintiff by virtue of the assignment of the Invoices. Intransia pleads the assignment of the Invoices and that it delivered the fig paste creating the amount due to Plaintiff. ECF No. 36 at 26 ¶ 64-54. Thus, Intransia sufficiently pleads facts supporting the first element of unjust enrichment. If, as Intransia pleads, Plaintiff receives and retains payment of freight and insurance from the Bakery, Intransia has also satisfactorily pleaded the second and third elements of an unjust enrichment claim. *Id*. ¶¶ 66-67. Finally, Intransia pleads that if Plaintiff keeps the amounts due Intransia "for the costs of delivery," Plaintiff will be unjustly enriched thereby pleading the fourth element of an unjust enrichment claim. *Id*. at 67. In sum, Intransia pleads an unjust enrichment claim.

Plaintiff's reliance on *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097 (9th Cir. 2004) is misplaced. In *Smith,* an individual plaintiff, along with an organizational Plaintiff ("DRAC"), filed suit under the Fair Housing Administration Act ("FHAA"). The individual defendant, Mr. Smith, discovered discriminatory design and construction defects in four properties designed and built by Defendant, which formed the basis of the suit. Thereafter, Defendant entered into a consent decree with plaintiffs through which it agreed to make certain adjustments to the four housing developments in accordance with an injunction prohibiting discrimination on the basis of disability. *Id*. at 1009.

Among other determinations reached by the Ninth Circuit, the court stated that DRAC sought the remedy of "disgorgement of unjust enrichment, alleging that Pacific Properties' failure to promptly retrofit inaccessible dwellings ... to conform with federal civil rights law ... has conferred

(and continues to confer) an economic benefit (whether direct or indirect) to Defendant." *Id*. at 1106 (internal quote marks omitted). The district court dismissed the claim and remedy finding "a dearth of case law supporting the proposition that a non-governmental plaintiff may properly seek to disgorge an entity with whom they are not in privity." *Id*. The Ninth Circuit concluded that "outside of the securities litigation context, the remedy of disgorgement only arises where a prior relationship between the parties subject to and benefitting from disgorgement originally resulted in unjust enrichment." *Id*.

This is not a case involving disgorgement in which a prior relationship between the parties is required.[7] As defined in *Federal Trade Commission v. Electronic Payment Solutions of America Incorporated*, "[d]isgorgement wrests ill-gotten gains from the hands of a wrongdoer ... [and] does not aim to compensate the victims of the wrongful acts, as restitution does. Thus, a disgorgement order might be for an amount more or less than that required to make the victims whole. It is not restitution." Case No. CV-17-02535-PHX-SMM, 2020 WL 6199414, at *3 (D. Ariz. Aug. 31, 2020) *citing S.E.C. v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993). Instead, this is a matter in which Intransia contends that if Plaintiff receives payment from the Bakery on invoices assigned to Plaintiff by Elmas, and those payments include cost of freight and insurance paid by Intransia, Plaintiff received and retained a benefit arising from the actions that Intransia took that ultimately benefitted Plaintiff.

As stated above, and while the Court expresses no opinion on the success or failure of Intransia's unjust enrichment claim, at the pleading stage Intransia has sufficiently alleged facts that do not support dismissal of this cause of action.

---

[7] With respect to Plaintiff's argument regarding attenuation, the citation to *Tait v. BSH Home Appliances Corp.*, Case No. SACV 10-711-DOC (ANx), 2011 WL 1832941 (C.D. Cal. 2011) is also misplaced. In *Tait,* the parties disagreed "in their characterization of unjust enrichment under the law of New York. Defendant contend[ed] … that New York law limits claims of unjust enrichment to plaintiffs who stand in privity of contract with defendants; Plaintiffs disagree. On this point, the weight of recent case law favors Plaintiffs. As the New York Court of Appeals recently reiterated, "privity is not required for an unjust enrichment claim, [although] a claim will not be supported if the connection between the two parties is too attenuated." *Id*. at *5 *citing Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011); *see also In re Burke*, BAP No. NC-18-1260-STaB, 2019 WL 6332370, at *4 (9th Cir. Nov. 25, 2019) (applying California law and holding unjust enrichment does not require a contractual relationship, but "is a common law obligation … based on equities of a particular case.") (internal cites omitted).

D.     Plaintiff's Declaratory Judgment Act Claim Should Be Dismissed.

Intransia's Cross-Claim asserts a declaratory relief claim under NRS 30.010 *et seq*. ECF No. 36 at 27 ¶¶ 69-73. Intransia's declaratory relief claim cannot proceed under Nevada law before a federal court exercising diversity jurisdiction. As explained in *Krave v. Liberty Mut. Ins. Co.*, 667 F.Supp.2d 1232, 1237 (D. Nev. 2009):

> A federal court exercising diversity jurisdiction applies state substantive law and federal procedural law. … Like its state counterpart, the Federal Declaratory Judgment Act does not grant jurisdiction where it otherwise would not exist, it merely provides an additional procedural remedy to the court. … . Therefore, the Federal Declaratory Judgment Act is the applicable authority for this Court.

For this reason alone, the Court recommends dismissal of Intransia's Count Three for Declaratory Relief.

Moreover, even if restated under the Declaratory Judgment Act ("DJA"), courts in the Ninth Circuit repeatedly hold that the DJA "creates a remedy for litigants but is not an independent cause of action." *County of Santa Clara v. Trump*, 267 F.Supp.3d 1201, 1215-16 (N.D. Cal. 2017) *citing e.g.*, *Muhammad v. Berreth*, No. C 12-02407-CRB, 2012 WL 4838427, at *5 (N.D. Cal. Oct. 10, 2012); *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F.Supp.3d 1140, 1152 n.5 (W.D. Wa. 2017) ("The federal statute, however, also creates only a remedy and not an independent claim. … [Citing] *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989), … [which states the] "Declaratory Judgment Act ... only creates a remedy and is not an independent basis for jurisdiction."); *see also Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 Fed. Appx. 680, 684 (9th Cir. 2014) ("Declaratory and injunctive relief are remedies, not causes of action."). Therefore, the Court recommends dismissing Intransia's Count Three for declaratory relief.

E.     Intransia's Doe Pleadings Should be Dismissed.

Plaintiff correctly states that "[a]s a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (internal citation omitted). The court in *Gillespie* goes on to state that "situations arise, such as the present, where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants,

unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id*. (internal citations omitted).

Intransia argues that it has "specifically defined the Doe Defendants with great detail … [and] has pleaded four counts against the Doe Defendants." ECF No. 47 at 12. Intransia's pleadings of Doe Defendants is found in its Cross-Claim at paragraphs 6 and 7. ECF No. 36 at 20 ¶¶ 6-7. A review of these paragraphs shows, however, that there is no allegation by Intransia against an individual Doe Defendant whose conduct is known, but identity is not. Rather, the Doe Defendants are alleged to have breached a contract and failed to indemnify Intransia, and, as a result of these actions, declaratory relief is requested against these unidentified entities or persons. *Id*. at 25 ¶¶ 55-62, 27 ¶¶ 69-73, and 27-28 ¶¶ 74-77.

The undersigned recommends dismissal of Intransia's Breach of Contract, Indemnification and Declaratory Relief claims. Adoption of this recommendation will leave only the Unjust Enrichment claim in which Doe Defendants are named. However, Intransia does not identify any conduct engaged in by a Doe Defendant who is known to exist, but whose identity is unknown, that was unjustly enriched. Thus, this case is distinguishable from *Gillespie* in which Doe pleadings were appropriate. *See Demoura v. Ford*, Case No. 1:09-CV-01344-LJO-SKO, 2012 WL 2577554, at **8-9 (E.D. Cal. July 3, 2012) (discussing Doe pleadings are proper when the specific identity of a proposed defendants is not known, but the wrongdoing is known). In fact, a review of Intransia's Unjust Enrichment claim simply lumps the Doe Defendants in with Plaintiff. ECF 36 at 26-27 ¶¶ 63-68. This, however, is insufficient to state a claim against such defendants. *Simon Design Engineering, LLC v. W&W Steel, LLC*, Case No. 2:08-cv-01291-RLH-PAL, 2009 WL 10709922, at *5 (D. Nev. Aug. 25, 2009).

For the reasons stated above, the Court recommends dismissing Intransia's Doe pleadings.

**III. Recommendation**

IT IS HEREBY RECOMMENDED that Türkiye Ihracat Kredi Bankasi A.Ş.' Motion to Dismiss Third-Party Defendant's Rule 14(a) Claim and/or in the Alternative to Transfer Venue Pursuant to 28 USC [sic] § 1404(a) and Memorandum of Points and Authorities in Support (ECF No. 45) be GRANTED in part and DENIED in part.

19

IT IS FURTHER RECOMMENDED that the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) be DENIED.

IT IS FURTHER RECOMMENDED that the Motion to Dismiss be GRANTED as to Intransia, LLC's Breach of Contract, Indemnification, and Declaratory Relief claims.

IT IS FURTHER RECOMMENDED that the Motion to Dismiss be GRANTED as to the Doe Defendants.

IT IS FURTHER RECOMMENDED that the Motion to Dismiss Intransia's LLC's Unjust Enrichment Claim be DENIED.

Dated this 5th day of February, 2021.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).