UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TURKIYE IHRACAT KREDI BANKASI, A.S., | Case No. 3:20-cv-00330-MMD-EJY |
| Plaintiff, | ORDER |
| v. | |
| NATURE'S BAKERY, LLC, | |
| Defendant. | |
| AND ALL RELATED CASES | |

## I.    SUMMARY

This is a commercial dispute about the fig paste that goes into Defendant, Third-Party Plaintiff, and Counter Defendant Nature's Bakery, LLC's fig bars.[1] Nature's Bakery entered into a multi-year deal with Elmas Dis Ticaret A.S. ("Elmas"), a Turkish fig producer, to purchase fig paste, but Elmas became insolvent either before it could send Nature's Bakery all of the fig paste promised under the deal, as Nature's Bakery alleges, or before Nature's Bakery could pay for all of it, as Plaintiff and Cross Defendant Turkiye Ihracat Kredi Bankasi, A.S. ("Turk Eximbank") alleges. Elmas is not a party to this case. Elmas and Nature's Bakery were using Defendant, Counter Claimant, Cross Claimant, and Third-Party Defendant Intransia, LLC to ship the fig paste between Turkey and the United States—and handle customs—at the time Elmas and Nature's Bakery's deal fell apart. Turk Eximbank—an export credit bank owned by the Turkish government—was assigned the rights to certain of Elmas' allegedly unpaid invoices to Nature's Bakery

---

[1]See, e.g., Nature's Bakery, *Whole Wheat Fig Bars* (Last Visited February 2, 2022), https://www.naturesbakery.com/shop-snacks/whole-wheat-fig-bars.

following Elmas' insolvency and filed this action seeking to recover on them. (ECF No. 1.) Turk Eximbank and Nature's Bakery have settled the claims between them (ECF No. 121), but disputes remain about who owes what to whom between Nature's Bakery and Intransia, and Intransia and Turk Eximbank, who have filed various claims against each other.

Before the Court are: (1) Nature's Bakery's motion for summary judgment on its breach of contract claim against Intransia (ECF No. 65);[2] (2) Turk Eximbank's motion for summary judgment on Intransia's sole remaining unjust enrichment claim against it (ECF No. 71 at 8-14);[3] and (3) Intransia's motion for summary judgment on its claims against Nature's Bakery (ECF No. 72).[4] As further explained below, the Court will grant Nature's Bakery's motion against Intransia because the pertinent indemnification agreement is unambiguous, valid, and enforceable, deny Intransia's motion against Nature's Bakery, mostly without prejudice because it does not comply with the Local Rules, and deny Turk Eximbank's motion as to Intransia's unjust enrichment claim because Intransia has presented a valid unjust enrichment claim that is not time barred, but a dispute of material fact remains regarding the extent to which Turk Eximbank was unjustly enriched, if at all.[5]

## II.    BACKGROUND[6]

This case arises out of Elmas' insolvency and corresponding inability to pay—if Elmas was solvent and continued to pay per the parties' preexisting arrangement, there

---

[2]Intransia filed a response (ECF No. 67) and Nature's Bakery filed a reply (ECF No. 69).

[3]Intransia filed a response (ECF No. 79) and Turk Eximbank filed a reply (ECF No. 91 at 34-39).

[4]Nature's Bakery filed a response (ECF No. 78) and Intransia filed a reply (ECF No. 90).

[5]Various parties requested oral argument on the pending motions but those requests are denied as unnecessary. *See* LR 78-1 ("All motions may be considered and decided with or without a hearing.").

[6]The facts recited in this section are undisputed unless otherwise noted.

would likely be no dispute between the parties to this case. Instead, Turk Eximbank is trying to recover money owed to Elmas from Nature's Bakery, Nature's Bakery is trying to get Intransia to cover approximately $130,000 of what it owes to Turk Eximbank by enforcing an indemnification agreement, and Intransia is trying to get both Turk Eximbank and Nature's Bakery to pay money that Elmas was supposed to pay Intransia for getting fig paste to Nature's Bakery in the United States.

The intricacies of who owes what to whom are informed by the course of dealing between the parties until Elmas went bankrupt. Elmas and Nature's Bakery had a deal where Nature's Bakery agreed to buy some 5.5 million pounds of dried fig paste spread across several deliveries. (ECF Nos. 65-1 at 3, 65-2.) Elmas would invoice Nature's Bakery for each delivery, and Nature's Bakery would pay Elmas. (ECF Nos. 71-1 at 4-5, 72 at 2.) There was a separate line item on each invoice for shipping and insurance charges, which Intransia, who handled the shipping and customs for each shipment, would pay upfront to get the fig paste into the United States. (ECF Nos. 47-1 at 2, 71 at 4.) But Nature's Bakery would not pay Intransia directly for these charges. Instead, Nature's Bakery would pay Elmas, and then Elmas would pay Intransia for the fees, taxes, duties, and whatever profit Intransia was owed for each invoice—under separate invoices that Intransia issued to Elmas. (ECF No. 72 at 2, 71-1 at 4-5, 72-1 at 167-208.)

Meanwhile, Turk Eximbank, the official credit exporting agency of the Republic of Turkey and a state-owned bank, was financing Elmas' operations. (ECF No. 71-1 at 2.) Elmas specifically participated in Turk Eximbank's Short Term Export Credit Discount Program, under which Turk Eximbank dispersed loan proceeds to Elmas totaling 85% of each shipment balance each time Elmas sent a shipment of dried fig paste to Nature's Bakery. (*Id.* at 2.) This program also gave Turk Eximbank "rights and title to the corresponding invoice rights from Elmas[.]" (*Id.*) And according to Turk Eximbank, it also meant that Nature's Bakery was supposed to pay Turk Eximbank directly, not Elmas, because Elmas had assigned the invoices to Turk Eximbank. (*Id.* at 2-3.) Turk Eximbank filed this lawsuit against Nature's Bakery because Nature's Bakery allegedly owes Turk

Eximbank approximately $400,000 for fig paste produced by Elmas, transported by Intransia, and received by Nature's Bakery to use in its fig bars. (*Id.* at 3-4.)

After Turk Eximbank sued Nature's Bakery, Nature's Bakery filed a third-party complaint against Intransia for breach of an indemnification agreement the parties executed on November 18, 2016. (ECF No. 19; *see also* ECF No. 19-1 ("Indemnification Agreement").) According to Nature's Bakery,[7] Elmas resurfaced in August 2016 after going silent for a few months demanding payment of several outstanding invoices totaling $130,046.20. (ECF No. 19 at 2.) "Because Elmas owed money to [Intransia], who had acted as a broker for Elmas in the past, Elmas instructed Nature's Bakery to pay this sum directly to them." (*Id.*) Nature's Bakery paid Intransia that amount, and in exchange, Nature's Bakery alleges, Intransia agreed to indemnify Nature's Bakery in the same amount if any other party subsequently sought payment on the same invoices. (*Id.* at 2-4.) Nature's Bakery asked Intransia to pay Turk Eximbank the $130,046.20 it had paid Intransia pursuant to the Indemnification Agreement both when Turk Eximbank initially demanded payment from Nature's Bakery and when Turk Eximbank filed this lawsuit, but Intransia refused. (*Id.* at 4.)

Because the Indemnification Agreement is central to Nature's Bakery and Intransia's pending motions, the Court describes it in detail here. The recitals section of the Indemnification Agreement provides as follows:

///

///

///

---

[7]Intransia alleges that Nature's Bakery presented Intransia with the Indemnification Agreement as a shipment of fig paste was coming into the United States, which Nature's Bakery requested be diverted to Missouri instead of Nevada. (ECF No. 36 at 13-16.) After Intransia diverted the fig paste to Missouri, Nature's Bakery tested the fig paste and rejected it, forcing Intransia to come pick the fig paste up and pay to dispose of it. (*Id.*) Intransia further alleges the Indemnification Agreement is invalid because Nature's Bakery was already obligated to pay for the invoice specified in the agreement, and Intransia signed it under duress because it had no other feasible commercial option other than to sign it if it wanted Nature's Bakery to pay it for the fig paste Intransia imported—specifically the one shipment in transit. (*Id.*)

1
2

**RECITALS**

A.   Nature's Bakery has previously purchased certain goods from ("**Goods**") from Elmas Dis Ticaret A.S., a Turkish company fig grower ("**Elmas**").

B.   After the Nature's Bakery received the Goods, but before it could wire payment, Elmas went out of business and its bank accounts were frozen.

C.   Intransia does business as, among other things, a customs broker and has previously performed services for Elmas for which it is still owed monies.

D.   Intransia has informed Nature's Bakery that Elmas has informed it that Intransia may receive from Nature's Bakery monies which Nature's Bakery owes Elmas, and apply such funds to the debt which Elmas owes Intransia.

E.   Nature's Bakery and Intransia have agreed that Intransia may invoice Nature's Bakery for the Goods in the amount of $130,046.42.  Intransia has issued its Invoice Number 1611034 to Nature's Bakery for the Goods ("**Invoice**").  The amount of the invoice reflects amounts which Nature's Bakery owes Elmas and which Elmas owes Intransia.

F.   Nature's Bakery has agreed to pay the Invoice.  In exchange, Intransia will indemnify Nature's Bakery, its successors, assigns and transferees against any claim by or for Elmas.  Intransia has represented to Nature's Bakery that Elmas consents to the substance and terms of this Agreement.

(ECF No. 19-1 at 2.) The Indemnification Agreement next provides that the recitals are correct and incorporated into the rest of the agreement by reference. (*Id.*) The Indemnification Agreement goes on to state the terms of the parties' agreement, specifically that: (1) Intransia issued an invoice attached to the Indemnification Agreement to Nature's Bakery (though there is a typo in Nature's Bakery); (2) that Nature's Bakery will pay the invoice for the Goods (though the heading states "Payment to Pacific Ingredient"); and (3) Intransia will indemnify Nature's Bakery "from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees, brought by or for Elmas, its successors, assigns, transferees, and agents, arising out of or related to the purchase of the Goods" (defined as the "Claims") up to $130,046.42 in the event any Claims are brought against Nature's Bakery. (*Id.* at 2-3.)

The Indemnification Agreement then includes several miscellaneous provisions. (*Id.* at 3-4.) In pertinent part, these provisions include one stating that authorized representatives of both parties read and understood the agreement and agree to be legally bound by it. (*Id.* at 3.) Another provision states that the Indemnification

5

Agreement is the entire agreement between the parties "with respect to the agreement hereof." (*Id.*) Yet another provision states that the headings do not affect the construction or interpretation of the agreement. (*Id.*) Other provisions state the agreement is governed by Nevada law and that venue is proper in state or federal courts located in Nevada. (*Id.* at 4.) Nature's Bakery's pending motion seeks summary judgment on its claim that Intransia breached the Indemnification Agreement, along with a declaration that the agreement is valid and enforceable. (ECF No. 65.)

When Intransia answered Nature's Bakery's Third-Party Complaint, it also filed a counterclaim against Nature's Bakery alleging Nature's Bakery breached a contract consisting of the Power of Attorney giving Intransia Nature's Bakery's permission to act on its behalf for import purposes and certain terms attached to the Bills of Lading delivered with each shipment of fig paste that Intransia delivered to Nature's Bakery in the United States. (ECF No. 36 at 8-13.) Together, Intransia alleges, these documents give Intransia the right to seek repayment from Nature's Bakery of all of the money Elmas owes Intransia for the shipments of fig paste that Intransia imported from Elmas in Turkey to Nature's Bakery in the United States. (*Id.*) Intransia further alleges that Nature's Bakery owes Intransia for a shipment of fig paste that Nature's Bakery ultimately refused delivery of in September 2016. (*Id.* at 13-15.) Intransia further seeks a declaration that the Indemnification Agreement is unenforceable (*id.* at 15-16, 18-19) and asserts in the alternative an unjust enrichment claim against Nature's Bakery in the event it does not prevail on its breach of contract claim (*id.* at 17-18). In its pending motion, Intransia seeks summary judgment on all three of these claims—breach of contract, unjust enrichment, and declaratory relief—against Nature's Bakery. (ECF No. 72.)

Moreover, Intransia asserted several crossclaims against Turk Eximbank. (ECF No. 36 at 19-29.) Turk Eximbank moved to dismiss these crossclaims. (ECF No. 45.) United States Magistrate Judge Elayna J. Youchah recommended that United States

1   District Judge Larry R. Hicks[8] grant the motion as to all the contractual claims Intransia

2   asserted against Turk Eximbank and dismiss the Doe Defendants named in Intransia's

3   crossclaims against Turk Eximbank but deny the motion as to Intransia's unjust

4   enrichment claim against Turk Eximbank. (ECF No. 53.)

5       Turk Eximbank objected only to Judge Youchah's recommendation to let

6   Intransia's unjust enrichment claim proceed (ECF No. 54), but Judge Hicks overruled

7   Turk Eximbank's objection (ECF No. 68). Judge Hicks first specifically noted in

8   overruling Turk Eximbank's objection "long-standing Nevada case law which has found

9   that unjust enrichment claims may exist against third party defendants despite a

10  plaintiff's pre-existing contract with the primary defendant." (*Id.* at 3 (citing *W. Charleston*

11  *Lofts I, LLC v. R & O Const. Co.*, 915 F. Supp. 2d 1191, 1195 (D. Nev. 2013)) (citation

12  omitted).) Judge Hicks next rejected Turk Eximbank's argument that it lacked a

13  sufficiently direct relationship with Intransia to support an unjust enrichment claim

14  because "each had a part in the successful completion of the shipment and Turk

15  Eximbank received a benefit from Intransia's services, i.e., the delivered shipment." (*Id.*

16  at 4.) Judge Hicks finally rejected Turk Eximbank's argument that Intransia lacked

17  standing to assert an unjust enrichment claim against it because Turk Eximbank only

18  had a relationship with Intransia Turkey because "Intransia does in fact appear to be

19  related to, if not the same company as, 'Intransia Turkey.'" (*Id.* at 4.)

20      In the live portion of its motion, and as noted, Turk Eximbank now seeks summary

21  judgment on Intransia's unjust enrichment claim against it. (ECF No. 71 at 8-14.)

22  **III.   LEGAL STANDARD**

23      "The purpose of summary judgment is to avoid unnecessary trials when there is

24  no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,

25  18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate

26  when the pleadings, the discovery and disclosure materials on file, and any affidavits

27  _____

28  [8]Judge Hicks presided over this case until he recused (ECF No. 101), at which
    point this case was randomly reassigned to this Court (ECF No. 102).

"show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

///

///

## IV.   DISCUSSION

The Court first addresses Nature's Bakery's motion against Intransia, then Intransia's motion against Nature's Bakery, and then Turk Eximbank's motion regarding Intransia's unjust enrichment claim against it.

### A.   Nature's Bakery's Motion Against Intransia

Nature's Bakery argues it is entitled to summary judgment on its sole claim against Intransia for breach of the Indemnification Agreement because the Indemnification Agreement is valid and unambiguous, and Intransia breached it when it refused to indemnify Nature's Bakery upon Nature's Bakery's demands either when Turk Eximbank first sought payment from Nature's Bakery, or when Turk Eximbank filed this case. (ECF No. 65.) Intransia argues the Indemnification Agreement is invalid or summary judgment on it is at least premature because it has raised a number of affirmative defenses to the enforceability of the agreement and Intransia does not yet have any obligation to indemnify Nature's Bakery because Nature's Bakery has not yet been found legally liable for damages to Turk Eximbank. (ECF No. 67 at 7-8.) The Court agrees with Nature's Bakery.

To start, the Court finds Intransia's argument that the Indemnification Agreement is ambiguous or vague unpersuasive. (*Id.* at 8-11.) While the Indemnification Agreement contains some errors, it is really quite clear. The Indemnification Agreement states that Nature's Bakery will pay Intransia $130,046.42 that Nature's Bakery owed Elmas to cover a debt that Elmas owed Intransia in exchange for Intransia's promise to indemnify Nature's Bakery against any claim "by or for Elmas." (ECF No. 19-1 at 2.) As Nature's Bakery argues in its pending motion, this case is a manifestation of the precise scenario apparently contemplated by the Indemnification Agreement. By filing this case, Turk Eximbank has brought a claim "for Elmas" because Turk Eximbank has acquired the right to collect on Elmas' invoices to Nature's Bakery. (ECF No. 71-1 at 2-3.)

Moreover, there is no dispute as to three material facts that inform the Court's interpretation of the Indemnification Agreement: (1) Nature's Bakery purchased fig paste

from Elmas; (2) Nature's Bakery always paid Elmas up until the Indemnification Agreement, not Intransia; and (3) Elmas paid Intransia to get the fig paste from Turkey to the United States. (ECF Nos. 65-1 at 3 (specifying that Nature's Bakery agreed to purchase fig paste from Elmas), 65-2 (the agreement between Elmas and Nature's Bakery), 67-2 at 2 (declining to dispute that Nature's Bakery agreed to purchase fig paste from Elmas), 72 at 2 ("Typically, Elmas would invoice Nature's Bakery for the cost of the fig paste and the cost of shipping and Elmas would pay the transportation and duty fees to Intransia."), 78-1 at 5 ("Prior to that time, Nature's Bakery had never paid Intransia directly; instead, Nature's Bakery paid Elmas and Elmas was solely responsible for paying the shipment fees."), 72-1 at 167-208 (invoices from Intransia to Elmas for its fees for specified shipments of fig paste).)

Against this background of undisputed facts, and considering the language of the Indemnification Agreement, Intransia's argument regarding a purported ambiguity in the term "Goods" used in the Indemnification Agreement rendering the entire agreement unenforceable fails to persuade. (ECF No. 67 at 9-11.) Intransia specifically argues the definition of Goods is fatally ambiguous by looking to the invoice attached to the Indemnification Agreement, which specifies that the charges identified in the invoice are for transportation and duty fees—not fig paste—and refers to the extrinsic evidence of the memo line of the check Nature's Bakery paid to Intransia, which says 'to pay freight company for transporta.' (*Id.* at 9-10.) But none of this renders the unambiguous Indemnification Agreement any less clear. There is simply no dispute that Elmas paid Intransia for transportation fees on each shipment of fig paste. Thus, it makes sense that any money Elmas owed Intransia would be for transportation fees. And it is accordingly reasonable that money Nature's Bakery paid to Intransia under the Indemnification Agreement would be for transportation fees as well—part of the total cost that Nature's Bakery would typically pay to Elmas for shipments of fig paste. (ECF No. 19-1 at 2 (specifying that Nature's Bakery is paying money it owes to Elmas that Elmas owes to Intransia in exchange for indemnification).) Moreover, given the course of dealing

1  between the parties, the "Goods" that Nature's Bakery previously purchased from Elmas

2  "a Turkish company fig grower" cannot reasonably mean anything but fig paste. (*Id.* at

3  2.) In sum, Intransia's argument that "Goods" renders the Indemnification Agreement

4  fatally ambiguous or otherwise invalid does not follow.[9]

5       Intransia next argues that the Indemnification Agreement is invalid because it was

6  executed under duress. (ECF No. 67 at 11-13.) Intransia supports this argument with a

7  declaration from its principal, Nick Babus, where he explains the business pressures he

8  was facing in September 2016 and accordingly states he "involuntarily accepted the

9  terms of the Indemnification Agreement because the circumstances gave me no other

10 alternative[.]" (ECF No. 67-1 at 5.) But Mr. Babus' concerns expressed in his April 2021

11 declaration are foreclosed by the unambiguous terms of the Indemnification Agreement

12 itself. First, the Indemnification Agreement contains an integration clause stating that the

13 Indemnification Agreement reflects the full agreement between Nature's Bakery and

14 Intransia about the subject matter of the agreement, and states that the parties have

15 read, fully understood, and voluntarily accept the terms of the agreement. (ECF No. 19-1

16 at 3.) Second, another clause specifies that the Indemnification Agreement is signed as

17 an act of free will. (*Id.*) Third, yet another clause specifies that the Indemnification

18 Agreement cannot be modified except by a subsequent writing signed by both parties.

19 (*Id.*) The express terms of the Indemnification Agreement thus foreclose Intransia's

20 current attempt to disavow it through the Babus declaration submitted along with

21

22

23

24       [9]Intransia also points out the error in the heading "Payment to Pacific Ingredient"
as suggesting that the ambiguity created by the term Goods was caused by Nature's
25 Bakery failing to properly adapt an old form of agreement. (ECF No. 67 at 10-11.) The
Court agrees there is an error in the heading, and Intransia's speculation as to how that
26 error occurred seems reasonable. But this argument is unpersuasive because it depends
on the Court accepting Intransia's argument that the term Goods is ambiguous, which,
27 as explained above, the Court does not. Goods means fig paste. And in any event, a
separate provision of the Indemnification Agreement states that the headings do not
28 affect the construction or interpretation of the agreement. (ECF No. 19-1 at 3.)

Intransia's response to Nature's Bakery's motion stating that he signed the Indemnification Agreement under commercial duress.[10]

Intransia next argues there was a failure of consideration in connection with the Indemnification Agreement rendering the agreement invalid because Nature's Bakery was already obligated to pay Intransia for importing the fig paste, so Nature's Bakery cannot have agreed to anything new when it entered into the Indemnification Agreement. (ECF No. 67 at 13-14.) However, that argument depends on the Court ruling in Intransia's favor on Intransia's breach of contract claim—which the Court has not done yet. Moreover, this argument is largely undercut by Intransia's concession that, "[t]ypically, Elmas would invoice Nature's Bakery for the cost of the fig paste and the cost of shipping and Elmas would pay the transportation and duty fees to Intransia." (ECF No. 72 at 2.) This concession is one element of the Court's finding, stated above, that there is no dispute that Nature's Bakery had never paid Intransia until it entered into the Indemnification Agreement. Thus, while its possible that Nature's Bakery may eventually have to pay some amount to Intransia, that would not have been a foregone conclusion at the time the parties executed the Indemnification Agreement.

With all this in mind, the express terms of the Indemnification Agreement also foreclose Intransia's lack of consideration argument. By entering into the Indemnification Agreement, Intransia got something new it did not look like it was going to get at the time—money.[11] Again, the recitals section of the Indemnification Agreement states that

---

[10]Further, and as Nature's Bakery points out in reply (ECF No. 69 at 6-7), the fact that the Indemnification Agreement is dated November 18, 2016—and that November is typewritten into the agreement—tends to suggest that Mr. Babus' explanation of events that occurred in September 2016 are not that relevant to his decision to sign the agreement in November 2016 (ECF No. 19-1 at 1).

[11]The Court also rejects Intransia's unconscionability argument for the same reason. (ECF No. 67 at 14-15.) Contrary to Intransia's argument that the Indemnification Agreement was one-sided, Intransia got money it might not have otherwise gotten for entering into the agreement. Intransia further argues, "Nature's Bakery paid Intransia a portion of the transportation and duty fees it was owed, but Intransia purportedly agreed to indemnify Nature's Bakery against **any** claims, losses, or damages arising from or related to fig paste it purchased from Elmas at any time, even if completely unrelated to

"Intransia may receive from Nature's Bakery monies which Nature's Bakery owes Elmas, and apply such funds to the debt which Elmas owes Intransia." (ECF No. 19-1 at 2.) Said otherwise, Intransia got money that Elmas owed it from Nature's Bakery. Given Elmas' insolvency, it is unclear Intransia would have otherwise gotten that money. This money from Nature's Bakery is sufficient consideration for Intransia's end of the deal, to indemnify Nature's Bakery in the event Elmas or "its successors, assigns, transferees, and agents" came to Nature's Bakery looking for that money. (*Id.* at 2-3.) Again, this situation has now arisen. But for now, the point is that Intransia received consideration for its promise to indemnify Nature's Bakery.

Intransia finally argues it has not yet breached the Indemnification Agreement because Nature's Bakery has not yet become legally liable to Turk Eximbank for damages. (ECF No. 67 at 16.) But Intransia's argument is again foreclosed by the unambiguous text of the Indemnification Agreement itself. The Indemnification Agreement states that Intransia must indemnify Nature's Bakery "from and against all claims, damages, losses, and expenses, including but not limited to attorneys' fees, brought by or for Elmas, its successors, assigns, transferees, and agents arising out of or related to the purchase of the Goods[.]" (ECF No. 19-1 at 3.) It is not limited merely to damages. And the Court finds that Turk Eximbank's filing of this case constitutes a "claim" filed by Elmas' assignee. Intransia's indemnification obligation under the Indemnification Agreement kicked in, at the latest, when Turk Eximbank filed this case against Nature's Bakery.

///

---

Intransia's transportation of said goods." (*Id.* at 15 (emphasis in original).) But that is an incorrect interpretation of the Indemnification Agreement. The Indemnification Agreement caps Intransia's indemnification obligation at the $130,046.42 it received. (ECF No. 19-1 at 3.) And Intransia itself argues that it was only being paid for transportation services it provided in connection with the importation of certain specified shipments of fig paste in the Indemnification Agreement. (ECF No. 67 at 9-11.) Thus, Intransia's indemnification obligation cannot be "completely unrelated to Intransia's transportation of said goods" as it argues. (ECF No. 67 at 15.)

Moreover, Intransia relies on *Sanchez v. Alonso*, 615 P.2d 934 (Nev. 1980) to support its argument, but *Sanchez* does not support Intransia's argument. (ECF No. 67 at 16.) Contrary to Intransia's argument, but like the Indemnification Agreement at issue here, the Nevada Supreme Court found in *Sanchez* that "the right of action accrued in favor of the appellant-indemnitee upon a demand from the creditors, whether or not appellant had sustained actual damage at the time." 615 P.2d at 937. Also like in *Sanchez*, Nature's Bakery's pending motion against Intransia, "premised on the indemnity agreement, was appropriately brought prior to the time any judgment was rendered against" Nature's Bakery. *Id.*

In sum, the Court grants Nature's Bakery's summary judgment motion against Intransia. The Court further declares that the Indemnification Agreement is valid and enforceable. Nature's Bakery is entitled to summary judgment that Intransia breached the Indemnification Agreement. Intransia must pay $130,046.42 of the amount that Nature's Bakery ultimately pays or has paid Turk Eximbank to resolve Turk Eximbank's claim against Nature's Bakery.[12]

### B.    Intransia's Motion Against Nature's Bakery

Because the Court grants Nature's Bakery summary judgment that Intransia breached the valid and enforceable Indemnification Agreement, the Court denies—as it must—the portion of Intransia's pending motion regarding its declaratory relief claim against Nature's Bakery. (ECF No. 72 at 16-20.) For the same reason, the Court grants Nature's Bakery summary judgment on Intransia's declaratory relief claim. (ECF No. 36 at 18-19.) Again, the Indemnification Agreement is valid, enforceable, and Intransia breached it.

///

---

[12]Intransia may accordingly renew its argument that "the $130,046.42 payment made by Nature's Bakery must still be offset against the balance Nature's Bakery continues to owe Intransia" (ECF No. 67 at 15) if the Court later finds Nature's Bakery owes Intransia any money. But for now, this argument is premature.

1    That leaves Intransia's arguments that it is entitled to summary judgment on both

2    its breach of contract and unjust enrichment claims. (ECF No. 72 at 2-16.) The Court

3    initially notes that Intransia's attempt to simultaneously move for summary judgment on

4    alternative claims is at best illogical and at worst impossible because one may prevail on

5    a breach of contract claim, or an unjust enrichment claim, but not both.[13] *See, e.g.*, *W.*

6    *Charleston Lofts I, LLC*, 915 F. Supp. 2d at 1196 ("An unjust enrichment claim cannot lie

7    where an express written contract exists 'because no agreement can be implied when

8    there is an express agreement.'") (citation omitted).

9    But more importantly when it comes to resolving the pending motions, Intransia's

10   motion for summary judgment violates the Local Rules. Under LR 56-1, "[m]otions for

11   summary judgment and responses thereto must include a concise statement setting forth

12   each fact material to the disposition of the motion that the party claims is or is not

13   genuinely in issue . . ." [and] "[t]he statement of facts will be counted toward the

14   applicable page limit in LR 7-3." Under LR 7-3, motions for summary judgment are

15   limited to 30 pages excluding exhibits. *See* LR 7-3(a).

16   Intransia decided to submit a separate statement of facts with its motion for

17   summary judgment. (ECF No. 72-2.) This decision arguably violates LR 56-1, which

18   provides that the motion must "include" a concise statement of material facts.

19   Regardless, Intransia's motion for summary judgment is 20 pages long. (ECF No. 72

20   (excluding the pages titled 'Exhibit Index' and 'Certificate of Service').) Intransia's

21   separate statement of material facts is 14 pages long. (ECF No. 72-2 (again excluding

22   the pages titled 'Exhibit Index' and 'Certificate of Service').) Adding the two documents

23   together per LR 56-1, Intransia's motion for summary judgment is 34 pages long—or four

24   pages too long. *See* LR 7-3(a). The Court may sanction Intransia for violating its Local

25

26    [13]Though there is of course nothing wrong with pleading these two claims in the
27   alternative. *See, e.g.*, *Braden v. State Farm Mut. Auto Ins. Co.*, Case No. 2:18-cv-01741-
     APG-NJK, 2019 WL 2176919, at *2 (D. Nev. May 20, 2019) (noting that "simultaneous
28   claims for breach of contract and unjust enrichment" may be pleaded in the alternative).

Rules and Civil Standing Order—*see* LR IA 11-8(c); *see also* United States District Judge Miranda M. Du's Civil Standing Order No. 1 (Last Visited Feb. 2, 2022), https://www.nvd.uscourts.gov/wp-content/uploads/2018/06/Civil-Standing-Order-MMD.pdf ("The parties are expected to familiarize themselves with the Court's Local Rules of Practice. Filings that fail to comply with the Local Rules or this Standing Order may be stricken.")—and will do so here by denying the portions of Intransia's motion for summary judgment regarding its breach of contract and unjust enrichment claims without prejudice to refiling in compliance with the Local Rules, at an appropriate time, and considering the Court's rulings above that the Indemnification Agreement is valid, enforceable, and that Intransia breached it.[14] Intransia's motion for summary judgment is accordingly denied as specified above.

---

[14]While the Court may waive Intransia's violation of the Local Rules here under LR IA 1-4 if the interests of justice so require, they do not, so the Court will not. First, compliance with the Local Rules is important. Second, the Court's denial of portions of Intransia's motion without prejudice allows the Court to compel Intransia's counsel to comply with the Local Rules without unduly prejudicing Intransia, their client. The Court's decision to deny portions of Intransia's motion without prejudice also satisfies the notice requirement of LR IA 11-8—this is the notice, and Intransia may still raise the same arguments again. Third, the Court finds it judicially efficient to require Intransia to update its summary judgment arguments in light of the Court's findings on the Indemnification Agreement included in this order, as those findings will likely affect the arguments Intransia would make in any renewed motion. Fourth, Intransia's reply in support of its motion for summary judgment prominently features arguments that it is entitled to summary judgment on procedural grounds. (ECF No. 90 at 2 (citing Fed. R. Civ. P. 56(c)), 8 (citing Fed. R. Civ. P. 56(e)), 10 (citing in part LR 56-1).) These arguments strike the Court as unfair when Intransia itself failed to comply with procedural rules in filing its motion for summary judgment. It is particularly notable that Intransia cited LR 56-1 as one reason why Intransia is entitled to summary judgment without acknowledging that Intransia itself violated LR 56-1 by filing its motion the way that it did. Thus, the interests of justice do not favor waiving the Local Rules that Intransia has violated here.

In the event Intransia files a renewed motion for summary judgment in this case in the future, the Court notes its preference in line with the Local Rules that each exhibit be uploaded as a separate document to CM/ECF, and that references to exhibits within briefing include pincites (specific page references), such as ECF No. 72-2 at 3. *See* LR IC 2-2(a)(3)(A) ("They must be attached as separate files…"); LR IA 10-3 (providing requirements for exhibits). Intransia's counsel filed its exhibits as one combined document (*see, e.g.*, ECF No. 72-1) and did not provide page references within its briefing to particular pages within particular exhibits (ECF No. 72), which made it difficult for the Court to locate cited exhibits and violates LR IA 10-3(c). The Court expects

1

2

### C.      Turk Eximbank's Motion Regarding Intransia's Unjust Enrichment Claim

3   Turk Eximbank argues it is entitled to summary judgment on Intransia's unjust

4   enrichment claim against it because it is barred by the applicable statute of limitations,

5   the claim fails as a matter of law because Intransia cannot satisfy two of its elements,

6   Intransia (as opposed to Intransia Turkey) lacks standing to assert an unjust enrichment

7   claim against Turk Eximbank, Intransia and Turk Eximbank lack a sufficiently direct

8   relationship, and Intransia maintains adequate remedies at law. (ECF No. 71 at 8-14.)

9   Intransia counters that it has satisfied every element of its unjust enrichment claim and

10  genuine disputes of material fact remain as to the extent to which Turk Eximbank was

11  unjustly enriched, Intransia's claim is timely, Intransia has standing and a sufficient

12  relationship with Turk Eximbank to bring its unjust enrichment claim, and its unjust

13  enrichment claim is not precluded by any other remedies at law. (ECF No. 79.) The

14  Court agrees with Intransia in pertinent part.

15  To start, the Court notes that Judge Hicks already addressed and rejected three

16  of Turk Eximbank's arguments at the motion to dismiss stage that Turk Eximbank now

17  reiterates without adding any new evidence to support them as the Court would expect

18  at the summary judgment stage. (ECF No. 71 at 11-14 (failing to specifically cite any

19  evidence).) Judge Hicks specifically addressed and rejected Turk Eximbank's arguments

20  that Intransia's unjust enrichment claim fails as a matter of law because contracts

21  existed between other parties to these fig paste transactions, that Intransia lacks a

22  sufficiently direct relationship with Turk Eximbank, and that Intransia lacks standing.

23  (ECF No. 68 at 3-4.) The Court sees no reason to depart from Judge Hicks' rulings on

24  these arguments because Turk Eximbank simply reiterates them without presenting any

25  _____

26  Intransia to comply with the Local Rules, especially going forward following the Court's explicit guidance in this order. Moreover, if Intransia files a renewed motion for summary

27  judgment in line with this order, Intransia must also file a motion seeking leave to amend the scheduling order in the case because the dispositive motions deadline has expired.

28  (ECF No. 64 (providing deadline of June 15, 2021).)

1    evidence obtained through discovery. As to standing, Intransia responded to Turk

2    Eximbank's motion in pertinent part with a declaration from Mr. Babus stating that

3    Intransia Turkey assigned Intransia the right to collect any transportation costs incurred

4    by Intransia Turkey. (ECF Nos. 79 at 11 (making the argument), 79-1 at 11 ("I am the

5    sole owner of Intransia Uluslararasi Lojistik Nakliye Tic. Ltd. Sti. ("Intransia Turkey"), and

6    I have assigned the right to collect any funds owed to Intransia Turkey to Intransia

7    LLC.").) In reply, Turk Eximbank urges the Court to reject the pertinent Babus declaration

8    as a sham but does not present any contrary evidence that would establish a dispute of

9    material fact as to whether Intransia Turkey assigned its collection rights to Intransia, as

10   Babus states. (ECF No. 91 at 36 n.25.) Absent any contrary evidence, it appears that

11   Intransia maintains standing against Turk Eximbank at this stage of this litigation.

12        The Court now moves to Turk Eximbank's merits argument before addressing its

13   statute of limitations argument. "Under Nevada law, unjust enrichment 'occurs whenever

14   a person has and retains a benefit which in equity and good conscience belongs to

15   another.'" *W. Charleston Lofts I, LLC*, 915 F. Supp. 2d at 1195 (citation omitted). Turk

16   Eximbank first argues that Intransia did not confer a benefit on Turk Eximbank. (ECF No.

17   71 at 9.) But Judge Hicks also addressed and rejected this argument when Turk

18   Eximbank raised it at the motion to dismiss stage, noting, "Turk Eximbank received a

19   benefit from Intransia's services, i.e., the delivered shipment." (ECF No. 68 at 4.) There

20   is no dispute here that Turk Eximbank would not have a right to demand payment from

21   Nature's Bakery if the shipments of fig paste were not delivered to Nature's Bakery, nor

22   is there a dispute about who facilitated the delivery of the shipments of fig paste to

23   Nature's Bakery—it was Intransia. And again, Turk Eximbank fails to proffer any

24   additional evidence not before Judge Hicks to make its argument stronger this time

25   around. Thus, the Court finds that Intransia conferred a benefit on Turk Eximbank by

26   facilitating the delivery of the shipments of fig paste.

27        Turk Eximbank next argues that is not unjust to allow it to retain any benefit it has

28   obtained by purchasing invoices from Elmas. This is where the Court finds a dispute of

18

material fact remains precluding summary judgment in Turk Eximbank's favor.[15] More specifically, the Court cannot say from the evidence proffered by the parties whether Turk Eximbank has successfully collected from Nature's Bakery only amounts corresponding to amounts Nature's Bakery owed Elmas for the fig paste itself. Or has Turk Eximbank recovered money from Nature's Bakery corresponding to the shipping fees Elmas would have paid to Intransia? And if it has, to what extent, meaning, how much does Turk Eximbank owe Intransia? These are material questions of fact that the Court cannot resolve on the current record. But if Turk Eximbank possesses money that Elmas normally would have paid to Intransia, it would not be just to let Turk Eximbank keep that money. This is particularly so because "Turk Eximbank disbursed loan proceeds totaling 85% of each shipment balance and was assigned the shipment invoice rights from Elmas." (ECF No. 71 at 3.) That suggests Turk Eximbank did not acquire rights to the shipping charges owed to Intransia for each shipment. Accordingly, if Turk Eximbank has recovered shipping costs from Nature's Bakery on top of the 85% per shipment it owns, that money equitably belongs to Intransia.

As to the statute of limitations, the Court agrees with Intransia that its unjust enrichment claim against Turk Eximbank is not time barred. (ECF No. 79 at 7-9.) "The statute of limitation for an unjust enrichment claim is four years." *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011) (citation omitted). The statute of limitations begins to run when "'[w]hen the plaintiff knew or in the exercise of proper diligence should have known of the facts constituting *the elements of* his cause of action[,]" which is a question of fact. *Id.* (emphasis added, citation omitted). Turk Eximbank's argument that the applicable statute of limitations began running when Intransia conferred a benefit is accordingly incorrect. (ECF No. 71 at 8-9.) Intransia did not have a claim until it knew or

---

[15]As pertinent to this argument, both Turk Eximbank and Intransia discuss caselaw but not evidence that may have allowed the Court to resolve this issue now. The Court declines to address the caselaw both parties discuss because the parties do not discuss the facts and evidence pertinent to this case, so it is difficult for the Court to say whether the cited cases favor one party's position or the other.

1    should have known all the elements of its unjust enrichment claim were satisfied. *See In*

2    *re Amerco Derivative Litig.*, 252 P.3d at 703. Thus, the applicable statute of limitations

3    clock did not start running until Intransia knew or should have known Turk Eximbank

4    retained a benefit which in equity and good conscience belongs to Intransia. *See W.*

5    *Charleston Lofts I, LLC*, 915 F. Supp. 2d at 1195 (specifying there is more than one

6    element to an unjust enrichment claim). There is no dispute here that Intransia filed its

7    claim against Turk Eximbank within four years of Turk Eximbank retaining benefits

8    allegedly due to Intransia. (ECF Nos. 36 (filed Sept. 10, 2020), 71 at 4 (stating that Turk

9    Eximbank received partial payments from Nature's Bakery in 2017 and 2018).)

10         In sum, Turk Eximbank's motion for summary judgment on Intransia's unjust

11    enrichment claim is denied.

12   **V.    CONCLUSION**

13         The Court notes that the parties made several arguments and cited to several

14    cases not discussed above. The Court has reviewed these arguments and cases and

15    determines that they do not warrant discussion as they do not affect the outcome of the

16    motions before the Court.

17         It is therefore ordered that Nature's Bakery's motion for summary judgment (ECF

18    No. 65) is granted as specified herein.

19         It is further ordered that Turk Eximbank's motion for summary judgment on

20    Intransia's unjust enrichment claim (ECF No. 71) is denied as specified herein.

21         It is further ordered that Intransia's motion for summary judgment (ECF No. 72) is

22    denied as specified herein.

23         DATED THIS 2nd Day of February 2022.

24

25    _____

26    MIRANDA M. DU
        CHIEF UNITED STATES DISTRICT JUDGE

27

28